I wonder if the attorneys that we're going to argue would step up and identify yourselves, please. Good morning, Matt McBride on behalf of Daryl Belton. Mr. McBride, thank you, you're up. And we're not related, are we? And you are? Good morning, Mr. Baker, Mr. McBride. You each have 15 minutes. You may save out from your 15 any portion you wish, Mr. McBride, for a response. Can I have 05? Of course. We'll probably give you more than that. My first question to you is what was the duty of the common law for municipalities or parks in terms of trees? To maintain their property in a reasonably safe condition. The common law duty as to trees was no different than just the regular duty. All right. Well, wasn't the duty of the common law as far as trees that you really didn't have a duty to trim your trees generally unless there was maybe a small, didn't it develop over time that if you had a small amount of property in an urban area that there developed a duty to take care of your trees because of, you know, that the expense wasn't such with a smaller property that you would be expected to trim your trees so that it didn't harm someone? Actually, Illinois was a little bit different. I think I maybe know where the question is coming from, and there's some allusion to that in the restatement in the discussion of the old rule and how it used to be in the old days before there was this urban-rural distinction and that essentially there was a non-liability sort of rule with regard to trees. Well, you didn't really cite any old Illinois cases involving trees, did you? I did. I cited two of them. There are two cases. They're both court-of-claims cases. Oh. I meant something outside the court-of-claims cases. I did not. And part of that was, if Your Honor will recall, the history of how sovereign immunity worked. At least in Illinois there was an issue of sovereign immunity until it was abolished and then by Molitor in 1959. And so things really turned in 1959, and it was only after that that the Tort Immunity Act ended up coming to pass. So the game was changed in 1959 when Molitor eradicated sovereign immunity. So at least at that point, we know as of 1959 going forward, there was going to be an issue and a duty of landowners to maintain trees and maintain their property in a reasonably safe condition. Well, generally, wasn't there a duty for the street, for the Department of Transportation in this case, didn't they have the absolute right and duty to make sure that their roadways were clear, which would permit them any time to go in and trim trees that were hanging over the roadway where this incident, the accident occurred? Well, that's a question we actually never got to. But the real answer is there's an fact as to whether or not the tree was overhanging the roadway. And in the entirety of the record, when we filed this case initially, the people that own the tree, the people that actually where it's located, essentially admitted that the tree was dead and decayed and it was their responsibility. But there isn't testimony that it was. So there's no information one way or the other that this was even hanging on the street, that it was more of a sudden? No, there's clear evidence that the tree was leaning that way. Now, how far it physically hung over the tree, your honors may be familiar with the trees that you drive in some neighborhoods where they're literally canopying over the street. I mean, there would be an issue of fact in this case as to the extent of the canopying, the overhang, whether it was over the edge of the roadway, whether it was over the top of the roadway. But for our purposes, it really is here nor there as to this defendant, because the tree was undoubtedly leaning. It is large enough to reach motorists. In terms of the, there seems to be a dichotomy in the cases. There's cases that say that the Tort Immunity Act is codifying the duties at the common law, right? It doesn't create any new duties. It's codifying what existed. Some of them say that. Yes, I'm saying some of them say that. Now, there's other cases that say that you have to determine what the duty was at the common law and that you don't get to the Tort Immunity Act until you determine whether there was a duty at the common law. True? Almost. The difference is, and I think what your honor is saying is correct to the most extent, to a great extent. However, the Wagner case is something that needs to be looked at. Wagner is the motorcyclist, isn't it? The motorcyclist on the... No, that's Eckberg versus Presbyterian. That's the 2nd District 2009 case, I think, where the motorcyclist was killed. Wagner, I believe, is a no left-hand turn case against the city. Yes, but wasn't the person that was injured on a motorcycle? No. Whatever. It doesn't matter. Go ahead. But in the end, the clear language in that case, the Supreme Court said is most of the duties are codified. And it appears that most of the duties are codified. All right. That's one case where it says most. Right. There are other cases that say that this isn't really creating any new duties. It's codifying the duty that existed at the common law. And the clear distinction here that's important in this case is this is the first case in which any defendant, particularly a municipality, has had the... has succeeded on an argument that an injury off their premises is somehow... they're somehow immune from that. Well, their position is basically that there's a limited universe, that at the common law, park districts had a limited duty to only those that it intended to use their property. And they're saying that universe is actually a codification of the common law, that parks had a duty only extending to those individuals that it intended to use... That's correct. That's what they're saying. And there is a real problem with the logistics of that argument because what that does is, if you remember, 3102 was to protect people. It's actually designed to protect people. So what it does is that that universe is then confined to somebody who makes the conscious decision to enter that property. Here you have an innocent person driving on the road who was struck by a tree off the property and somehow now 3102 is triggered. The big difference is all of the cases that have ever come before this court or the Supreme Court, always the injury has occurred on the property. So there's never any issue for the Supreme Court to say, hey, this is an exhaustion. Well, let's say there was a duty then to make sure that the property was in good condition for everyone, the whole universe. All right? Now, in 106, the language says that if there is a duty, then you have to establish willful and wanton conduct for a breach of that. The statute grants immunity for the universe, but you have to show or plead at least willful and wanton. Here's the difference if we go back to Article 3, and I talked about this in the brief. With 3106, I think Judge Duncan Bryce actually made the right call here and found that 3106 didn't apply at all because the injury occurred off the property. Now, here's where this is just so. Well, didn't she really read that into 106? Do you see anything in 106 that says it has to occur on the property? Or do you just infer that? That's how the Supreme Court has analyzed it. In which case? Well, she cited, I argue, the Bub case and the Bub case that refers to the place of injury. Place of injury as being on the recreational property. Well, I think the Bub case did talk more about what's the type of property, what's recreational, what isn't. But let me go back to the very beginning, because I think this is a huge point here with regards to when we get into Article 3. Article 3 involves injuries that occur in the use of public property. Except that 106 doesn't seem to indicate that you have to be a user at the time that you're injured. Right. In other words, you could possibly be just driving by the park when the tree falls on your car. Except you would get hit by the park district or by the Forest Preserve District's argument, 3102 would catch you. Because you'd always have to be an intended permitted user. You'd get hit. But 106 doesn't really limit itself to intended and permitted users. And if you read the complete Act, there's a suggestion that a condition is applies to the property itself or what the municipality would envision as far as adjacent property users. Now, there's an issue of fact here as to the determination of whether this is adjacent property or not. We've never dealt with that issue. There's an easement that's involved in this case. We never got to that. No one's ever argued that this is adjacent property or admitted that. So I think that there's a little bit of a distinction there. But here, if we go back to the initial situation, we never get to Article 3 unless the injury occurs in the use of public property. And there's no question that the use of public property we're talking about here is the public property. What would be your best case then that says that the Tort Immunity Act has nothing to do with this case because it doesn't involve the use of municipal property? The best case would be Van Meter. And in that case, the Darien Park District didn't have the gall to argue because the injury was off the public property that they're just out of luck, which is the defense in this case. But what was the injury in Van Meter and where did it occur? They were flooded. The condition on the public property was they altered the surface. But that was, there was a duty in common law regarding water that goes back centuries. So I don't know that, well, you say it's your best case. Well, interesting enough, no one's confessed here, at least in the briefs that I've seen, that the Forest Preserve District did not have, or a public entity did not have a duty of common law to maintain trees. I've not seen that argument anywhere. So I understand today how it's come up and I'm prepared to deal with that. But I think they've practically conceded that. Did you have any cases out of Illinois that you, regarding trees and the motion to reconsider because we've dealt with that issue, Illinois would be the only case, only jurisdiction in the country. Now we have the Court of Unity Act that's central to that. I researched the California legislative history when we first took our court of unity. All the tree cases that I reviewed were with municipality-owned streets and the tree ended up on the streets and the municipality that is the, was responsible in the cases for the street. I didn't find one like this, park district tree case that you, in any motion to reconsider. Again, I could point those out in a supplemental brief, I'd be happy to. No, you know, that's what you were to do originally. If there is one, tell me about it now. Well, there's, in the motion to reconsider, there's a case from Arizona. There's at least five cases and most of them are very recent from Indiana. That involve park districts and trees? Involve municipalities where their trees fall onto public roadways that they do not own. Okay. So, but you say they're in the motion to reconsider, but not in your brief. This was a duty case where I'm, I'm, I'm arguing the duty and alternatively, but don't those cases support your position that there was always a duty regarding trees? Well, I think those cases argue against that. They're making similar arguments that the Forest Preserve District is making here. Now they're not making the same way because it's not a 3102 or 3106 question, but they're arguing the same way about immunity. They're saying, hey, this is a cost to society. That's just going to be too bad if we fall, let trees, you know, they grow in their natural state and they fall and kill people. It's just too bad. Now when you pled the duty, did you plead anything like that the cost of having the trees inspected throughout the county and the Forest Preserves, that that would be, that that would outweigh the injuries that occurred in this case, that there would be, it would be reasonable for the Forest Preserve to have some kind of system in place to make sure that the trees... I believe in the pleading there is... That's not a requirement as far as... In this case, it's not a requirement because they never, they never raised that as a defense, 103, I think it's B or 102B that follows that and you do that weighing that burden. And it actually was kind of a defense early on in the case because the Forest Preserve's position was, we're going to have to, we're going to have to inspect millions of trees here. We can't afford to do that. But the reality is our expert came in and it's in the record. All you needed to do is do a slow drive-by past these trees that have targets that can fall and kill people on the road and you can, plain as day, you can see those trees. And then you weigh that cost. I mean, if we got to this as a fact issue, of course, if you weigh that cost against playing demolition derby on the roads of the state here, obviously the cheaper version and the easier version is to do a drive-by. In fact, their expert indicated that he didn't think that that was sufficient enough. This is a pleading case though. I mean, you're, you know, you're bringing up all kinds of possibilities that could occur within the context of your complaint. But this is a pleading case. You said you didn't state a cause of action. Well, we lost on summary judgment. So I believe we did, we properly pled a cause of action. And we didn't need to plead. No, but what I'm talking about is that you're giving us hypotheticals that really don't help us that much. It's like suggesting that this case might be different if there were 35 children having a picnic and the forest preserve and the tree fell on all the kids and killed all 35 of them. I understand. Maybe I can put it this way. The Willful and Wanton issue would then clearly come into play because of 106, all right? Because they're on the property. And then you'd have a big argument about whether Willful and Wanton is initially the determination to be made by the court. Well, so forth and so on. But this is, this is a kind of an anomaly, this case, because it involves property other than the property of the forest preserve district where the injury actually happened. I mean, it fell off the forest preserve property onto a roadway that the forest preserve doesn't have any control over. Right. For example, if, to give you a hypothetical that might confuse them a little bit, I don't know. If there were a recreational vehicle that transported stuff around the forest preserve district, a vehicle, okay? But it's used for, solely for forest preserve purposes. But it exits the forest preserve and instead of the tree falling on the car and the injury, the forest preserve truck hits the driver of the other vehicle on a road adjacent but not in the forest preserve. Different case? Totally different case. Of course. Totally different. For that driver of the forest preserve to be exercising care. Right. In or outside the property. And that would be without, you wouldn't even get to the issue of immunity on that case. If I can take the Justice back to the initial question, the duty question, because I agree at some threshold extent, and that's how I put it in the brief, this is a duty case and count one is a common law negligence case. Count two was 31028 claim. Now at the end of the day, whether that was viable or not, I think as this case transgressed, 31028 doesn't create new duties. We didn't appeal that claim. We lost that claim early on. It went away. But as Justice McBride will remind you, this is a summary judgment case. We don't have to buy into any analysis that the trial court undertook. And I agree. We can reach our own conclusions about whether or not there was ever, based on your complaint and the case law, a duty upon their part to protect you from disease trees that fall on the road. And I still don't think that at the end of the day... That's why she asked you about the foreseeability question. All those, the four prongs of foreseeability, that they're the class of people and all that, I mean, all of those, we meet all of the tests, each one of those Supreme Court cases that, you know, when I talk about those four prongs, we meet those easily. Now as to the duty issue, I mean, foreseeability wasn't even argued on summary judgment. But back to the pleading issue again. No Supreme Court case anywhere, regardless if the injury is on or off, says we're not going to look to see whether or not there's a common law duty. That's the first thing that comes up. All of the cases say that the municipality has a duty to keep their property in a reasonably safe condition. And not one case anywhere says, except for their trees. They have to maintain everything, but you know what? Their trees are fair green. They can fall and they can do whatever they So we have the common law duty. So before we even get to 3102A, if we have a common law duty, all the case law answers the real question here. Because 3102A doesn't take them away. If it exists, it doesn't go away. And that's really the logic here behind everything. Well, the Forest Preserve District, I don't want to put words in their mouth, but they've been very insistent in their briefing that they want to hold on through 106. I think they see that as their line of defense, more than 102. You still have to have recreational property. This was recreational property, though. I mean, and you're saying that that immunity does not apply to non-use. It was absolutely 100% not recreational property. And it's 159th Street is what all the cases focus on when you're talking about immunity. At the end of the day, they're going to focus on where the injury occurred, not where the condition did. And that makes sense, because otherwise you could object. You can't use a tree for recreational purposes. Is that what you're saying? Kids can climb it. A public road. The Tort Immunity Act in 301 of 6 was not designed to immunize municipalities from killing and maiming people in public roads. That's what I'm saying. I understand exactly what you're saying. Common law, though. Was there sovereign immunity at the common law? You couldn't really sue for a tree, could you? Could you sue the state at the common law for an injury? Absolutely. And that's where the Court of Claims came in. Those are state cases. The state was held liable for those treaties that were not maintained. Were they interpreting the common law? Well, the common law is. That's what, I mean, the body of cases in our history, including Maharan in 1971, that is the common law to me. Right, but I thought at the common law we had sovereign immunity. And then it was abolished by the Supreme Court in the, what's the name of the case? It was abolished by the military in 1959. And then the Tort Immunity Act was supposed to codify common law. It wasn't supposed to create anything new. It was codifying the duty that existed at the common law. There was always a common law. The argument can be made, and I think that's what the court bought into, was that at the common law there was a limited universe for injuries that would occur in parks. And that was, the limitation was to those individuals that the park intended for its use of the property. I can't speak to sovereign immunity between 1940 and 1959, honestly. But I can speak, because I think, Justice, you hit it right on the head, is for injuries that occurred in parks. And that's what this case is all about. It wasn't. It was an absolutely 100% innocent person to which the tort immunity doesn't apply to driving on a public road. So the underlying question is, you know, are the roads of this state going to be cluttered with falling trees or not? Okay, I think we understand your position. Here, I have one question. Oh, go ahead. In your complaint, did you allege that the trees were not on recreational property? That the trees were not on recreational property? No, I didn't allege that. I don't think I made that particular statement. Okay. In the plea. Again, the common law cause of action did allege where the injury occurred, and that the Forest Preserve District was the owner of the tree. That's the common law question. Okay. Mr. Baker, good morning. Good morning. It pleases the court. I'd like to go right to a comment that Justice Gordon made. And I think that if you take a look at the complaint, what it alleges is that the tree is part of Green Lake Woods Forest Preserve. And Justice Cahill, you commented that the Forest Preserve has consistently focused on 3-106 immunity. And that's true. We believe that there are two provisions of the Tort Immunity Act that apply here. Initially, and consistently through this litigation, we have focused on 3-106. There is no dispute in this case that a tree... And rightly so, because you realize that 102 doesn't help you because this driver of this vehicle was not a user at the time that the injury occurred. And your argument is, I think, that under 106, he doesn't have to be a user. That's true. Under 106, he does not have to be. The statute doesn't make any reference to... Intended or permitted users. Correct. What about the cases that say you don't look to 106 until you find that there's a duty under 103? In addition to our focus on 106, it is our view. And the Circuit Court adopted this. That under 3-102, there simply isn't a duty. This case is here on summary judgment where there was a finding that there was no duty under 3-102. And the cases and the language of 3-102 make very clear that the duty to maintain property. And that's what this case is about. It's duty to maintain property extends only from a public entity to users of that public entity's property. And the cases have gone on over and over again, saying that 3-102 is the codification of a public entity's duty to maintain its property. And the limitation on that duty. So we have relied on 3-102, particularly once Judge Duncan Brice ruled against... Aren't there cases, though, that say that at common law, municipality had the same duties as a private landowner? Right. And that... Duty of ordinary care. I mean, are you saying that doesn't exist? Well, what we're saying is that when the Tort Immunity Act was enacted, and the Supreme Court cases have said this repeatedly, the duty of care to maintain property was codified and limited in 3-102. And 3-102 duty to maintain extends only to intended and permitted... You're reading exactly the opposite of what he's suggesting, and I think you're reading exactly the opposite of what Molitor holds. Basically, you are subject to the same rules of negligence as anybody else, except for these exceptions, which are contained in the immunity. Correct. Correct. To answer Justice Cahill's question earlier, he gave a hypothetical. A Forest Preserve van leaves the Forest Preserve, strikes a child in the street, kills that child. You're saying, since the child was out in the street and wasn't a permitted user of the Forest Preserve, that the Forest Preserve has no duty to the child because the child wasn't using the parking lot? Not saying that at all, Judge. And what's the difference between that scenario and this? They're free. It falls down and strikes someone on the street. The difference is, the tree case falling down involves a condition of property and allegations with regard to... What if the brakes were bad on the truck? Now we're back... We got a fire truck case out there, you know, that's where we're headed. There's a fire truck case out there with faulty brakes, which ordinarily the fire truck on the way to the fire would be a mule, because it's in the process of going to a fire. Except in the case we've got, an Illinois case, the brakes were faulty. There's duties... Before you trigger immunity, you look to whether or not there was a duty of ordinary care. And the court found, quite rationally I think, that the fire department is not excused from the ordinary care of maintaining their vehicles in a safe condition. Bingo. Now, all he's saying is that you... This gets into the foreseeability issue, I suppose. You're under a duty to make sure that you don't have any dangerous trees on your property. Now you may have a defense, because there's the old notice issue, you know? Correct. Whether you had notice of the defective tree. I'm not sure that that is implicated in the same way it would be for a person with private property. I don't know. But that's probably a factual question. One of the things... Whether or not you had... What if he drops out an expert who says, you know, all you had to do was look at that tree to know that it was going to fall down any day now? These are factual questions that we haven't... Exactly. But they're ordinary care questions, initially. They don't even do with immunity. They have to do with an injury that occurred to an individual who wasn't even on the forest preserve property. He's driving along in his car. And the tree falls on his car. Wrecks his car and seriously injures him. And you're telling me that because of the 106, you have no obligation whatsoever. He goes away penniless. Because of 106, we're responsible only for injuries that occur as a result of a condition on our property where there's willful and wanton conduct. And there's no allegation of willful and wanton conduct. Right. In this case. Right. So you're saying the willful and wanton protects you in the 106? We are saying that. And the Tort Immunity Act, the cases are legion with regard to the purpose of the Tort Immunity Act, the notion that somehow this result is not contemplated by the legislature in their enactment of the Tort Immunity Act. This is exactly what the Tort Immunity Act does contemplate in certain circumstances. Plaintiffs and claimants will have no recourse against a public entity where they might have recourse against a private entity. We've got a case right here in our district, a flooding of the 205 West Randolph building where the city tried to impose immunity for a broken water pipe supplying water to a private building. The basement was flooded. You're familiar with the case? I'm not. Basically, it said, and it quoted some other cases, where a local government entity, that's you, has damaged a non-user's property. This was a pure property damage case. Of course, it was the car damaged in this case, too. It wasn't personal injury. Courts have not found immunity under the Tort Immunity Act. And Justice McNamara cited to a couple of cases the Dundee Fire Protection District. That was the faulty brakes in the fire truck. In another case, Anderson v. Souter, where there was flooding resulting from dam construction. Private property, again, flooded and damaged. And in the case of the 205 West Randolph case, it was a flooded basement over there at 205 West Randolph, which flooded out some businesses down there. That case didn't involve recreational property. True, true. Good point, good point. And at the heart of it. So we don't have a recreational property case involving the kinds of cases I'm talking about. And I think you're right, we don't. At the heart of the Tort Immunity Act, and the cases have said this over and over again, the purpose is to encourage public entities to provide the types of facilities that the Forest Preserve does provide. Right. And the way that's done is by letting the private. And these cases were basically aimed, in all of these cases, and 106, if you'll recall, is primarily aimed at the insurability of park districts with respect to primarily swimming pools and gymnasium equipment and things like that. Now, because of the way it's written, it sweeps the Forest Preserve District into it. But I don't think anybody was writing 106 when they were drafting 106 to protect. 3-106 expressly references open spaces. I understand. And it has been interpreted repeatedly to protect. You've anticipated what I was going to say. And one aspect of 3-106 that I want to touch on has to do with plaintiff's argument that the courts somehow focus on the site of the injury. And I have a problem with that. Most of the cases. Well, that's because some of the cases really don't help you much, like the flooding cases. The flooding cases do not involve recreational property. I understand that. What I'm getting at, Judge, is that the cases don't say that you must look at the site of where the accident occurred. They say that you have to focus on the condition that the plaintiff has complained of. Is that condition part of recreational property? So you have the Sylvester case, which involves, I think it's a car stop in the parking lot at Soldier Field. And the court says, well, we know Soldier Field is recreational property. But this is in the parking lot. And it's a car stop. It's not something that people engage in. Well, we know they're going to sweep in the parking lots, don't we? We know that the court ultimately concludes that because the parking lot facilitates the use of the recreational facility, Soldier Field, that they will cloak the parking lot in the mantle of recreational property. Let me give you another hypothetical. You've got a fireworks display going in the Forest Preserve District, sponsored by the Forest Preserve District, and free to all. And you shoot off 4th of July fireworks. And one of them, naturally, doesn't explode, but goes a quarter of a mile away and lands on top of a house and burns it down. No liability because you're a recreational facility, right? I don't think so. So you'd argue that it would have to be shown that that was willful or not? Well, that is the standard of liability under 3-106, clearly. All right. I understand your position. But I'm having a real problem with this universal argument that your immunity extends everywhere, not just for the Forest Preserve District property, but beyond it, beyond it. What the case is. And if we give you this one, don't we have to give you the fireworks, too? That may be a different case. Why? What's the difference between the fireworks and a tree limb that crashed? The fireworks case involves active conduct by the entity. And there's a case, I think it's called McEwen, where 3-106 was a service. Good point, Mr. Baker. You're pretty fast on your feet. Thank you, Judge. You're welcome. The McEwen case involved someone who was injured on a hayrack ride. And they sued, I think it was a park district. And the park district defended with 3-106. And the court said, wait a minute, wait a minute. What's being alleged here has to do with the conduct and the operation of the hayrack. And therefore, it's not really a condition of the property case. Like the brakes on the fire truck. Correct. And that's the distinction. But here, we don't have that. All we have is the condition of a tree in a forest preserve. OK. So what you're saying is that if a tree falls in the forest preserve and injures someone, that's definitely covered. But if that tree falls outside the property, it's not. I'm not sure what you mean by covered. Well, if a person was just walking through the forest preserve, and that tree falls on the person. And there were all these experts that said this tree had been dead for quite some time. And you're hypothetical. This person is a user of forest preserve property. The person is the user. Then we would not have the 3-102 argument. But we would rely on 3-106, as we have consistently through this case. And they would have to. But if the testimony in this case, and this record contains testimony about the fact that this tree had been dead for quite some time, and it was visible just looking at it because of the fact that there was no foliage, I think, from half the tree up, something like that. In that case, there might be certainly, one could argue that not doing anything with the tree for the 5-10 years that it had been apparently dead could rise to the level of willful and wanton conduct. That argument could be made. But there is no allegation of willful and wanton conduct. No, I understand. Do you agree at the common law that private landowners had a duty regarding trees if they became such that it was obvious that the tree was dead, that there was any duty to a public way where passersby could be injured by the tree? I think that's right. But there's a distinction between public entities and private entities that the plaintiff has refused to acknowledge. I don't know. I've seen quite a bit of language in some of these cases that say that at the common law, the private landowner and the municipality had the same duties in terms of reasonable care of the property. But generally speaking, they had the same duty of care. And 3-102 codifies our duty of care as being one of ordinary care, but it's codified and limited. Well, even without that, going back to common law, the Forest Preserve District could argue, too, on the matter of simple negligence and ordinary care, you've got a lot of trees. And there's evidence in this case regarding that. It's a lot of trees. We have 70,000 acres. But there was testimony on both sides of this issue, was there not? At the summary judgment, the expert that they had said this would really not require even an inspection system because it was obviously dead for so long. Wasn't there some testimony? There was some testimony about that. However, this case was resolved on legal issues and all those factual questions, Judge Duncan Bryce indicated that, and we would agree with this, that they're not really part of the analysis at this stage. Well, just one last question. What is the meaning of the language in the act that says that the existence of the condition and its character, not being reasonably safe, there's language, I don't want to read the whole thing, but it says, and for uses that the public entity actually knew others were making of the public property or adjacent property. Why did they put that in there, that adjacent property language? That portion of, I think that's 3-102B, is that right? Yes, B1. And that has not been raised in this litigation? No, I understand, but I'm asking you what you think that that language refers to in regards to this particular condition. I mean, it does relate to the existence of a condition. It does, but I don't think it doesn't relate to the general duty of care as being limited in the preceding subsection, subsection A, which confines that duty to intended and permitted use. You'd be in a much better position, wouldn't you, if they were driving along, that tree was struck by lightning and fell on the car. That would be a different case. That's Chicago flood, isn't it, basically? I think so. And one comment, and this is raised in our brief, but I just would like to touch very briefly on this. We don't really know what caused the tree to fall down. No, and if that tree can stand for- Do you think they're going to be obligated at trial or if it comes to that, they'd have to prove what caused the tree to fall? Well, wasn't there testimony by the experts that the tree fell because it was dead and old and it wasn't going to fall at some point because it was diseased and dead? There's a- It wasn't going to stand on its own for very much longer, and in fact, it did fall. And I just, there is testimony from plaintiff's expert regarding that, but the court can take judicial notice that that tree can stand for years. A healthy, an apparently healthy tree can fall over for no apparent reason. These things- What do you do with the court of plaintiff's cases? First of all, they're not precedential, but- Did they involve trees, though? They did. At least one of them did, but it also involved someone who was on state property at the time. And in raising that, it brings me to the last point that I wanted to make to your honors, which is that counsel has talked about our motorists to be subjected to this type of danger as a result of the circuit court's ruling. And this is a case where the plaintiff developed some evidence that this tree straddled the property line, was partly in the roadway right-of-way. And the cases that they've cited to you, these court of claims cases, talk about the duty of a public entity, the state, to maintain its roadway and its roadway right-of-way, and to protect people on the right-of-way with regard to trees. And the plaintiff in this case asked for and was given leave to amend his complaint and name the Illinois Department of Transportation as a defendant. I would suggest to you that the plaintiff in this case and any other similarly-situated motorist could bring a viable claim against the entity that has jurisdiction over the roadway and the roadway right-of-way. And they didn't do that. Ah, well, that's an interesting angle. Because of, you know, falling of the tree, the state would have, the Department of Transportation would have the obligation to get that out once it had noticed. True? Like putting up a sign, watch out for falling trees. That's the same duty that they're suggesting that we have. And as I think you commented earlier... Well, you do have some duty. You don't put up deer crossing signs. No, you do. I've never understood why they're there, except that I suspect that they're there to help to protect you from any possibility. Because I've been driving down roads for a long time. In fact, there's one road I drive fairly regularly, which goes right through the Forest Preserve, but is not part of the Forest Preserve, but where deer regularly cross. And you have a sign that says deer crossing. That's in case I hit a deer and my car is demolished. I don't go after the Forest Preserve District, do I? No, you don't. Because you put up a deer crossing sign. Well, there's other reasons that you don't go after the Forest Preserve. Right. But it's just an example of the kind of anomalies that occur. In this case, I just want to sort of try to clarify this. You're basically saying that the Tort Immunity Act codified whatever duties there were. Correct. But don't the cases say that it is a limitation, but anything beyond that, we look to the common law. But... Well, I mean, there seems to be significant decisions that say that. And at the common law, the restatement says that a possessor of land who knows or has reason to know that a public nuisance caused by natural conditions and this is all about tree cases, you know, that exists on land near a public highway is subject to liability for failure to exercise reasonable care to prevent an unreasonable risk of harm to persons using the highway. So it's not putting it on the highway. It's putting it on the possessor. And that's like the Mowrin case that the plaintiff has cited. And that involves a private entity. And they have not cited one single case to this court that involves a duty imposed on a public entity. You haven't cited any either that say that a public entity isn't responsible for trees that fall upon a public highway. But there are cases out there from other states that do impose liability on a municipality for trees that have fallen on passersby on someone else's property because of this common law duty that existed regarding trees or conditions of the land. And we have cited cases to you where our courts have held that your initial obligation, the initial analysis involves whether or not you were negligent at all before you even go to the immunity question. Of course, it's the duty... When you take a common ordinary negligence analysis... Before you get to... Before you trigger 107. Right. Then having done that, then you stop and jump in and say, aha, we've got 106. Correct. And I understand your argument. That 106 is broad enough to cover this kind of a situation. I think that it has to. And that that's the only way to... It's the only way to protect the Forest Preserve District, maybe. It's the only way to interpret 3-106 consistently with the purpose of the Tort Immunity Act to encourage the Forest Preserve, an entity that has 70,000 acres... Well, his argument is just the adverse of that. That if we give you this one, that means you'll completely neglect maintaining the trees in the Forest Preserve. The entities that have jurisdiction over the roadways and the roadways, right-of-ways, have a duty to maintain their property. Anything else? No, thank you. Counsel? If I may, before I get into a few of what I may have underestimated before in my responses to a few questions. I don't think a defense in a duty case can be had by pointing the finger at somebody else. And in fact, in this particular case, when there was some confusion about when they were denying that this was their tree, there was a whole... Oh, he's just being a good lawyer. Well, and I understand that. If I was standing in his shoes, I'd say the same thing. He's being a fantastic lawyer. But I think the real answer, if there really was liability with IDOT or County Med City, they would have brought them in the case. They would have cross-claimed. So to say, hey, they should have sued somebody else. Well, they could have brought a cross-claim against those folks, and they didn't. And I'm hard-pressed to believe if they really could offset their liability in the case, that they would not have added them. But additionally, from a practical aspect, to think that the Illinois Department of Transportation, for trees that are on Forest Preserve District property, have a duty to get in there with their trimmers and pruners and go into Forest District property and cut their trees. No, they can always... They can trim trees that are actually overlapping their property. They are able to do that. And there's an aspect to this case that's a little bit different than that. That is a tree that has a target, 75 feet tall. Let's just say, hypothetically, this one... It doesn't apparently involve overlapping. Well, it may or may not. It's a fact issue. I just, from my perspective, to eliminate the fact that this is a 75-foot tree on someone else's property, off of the roadway, that could clearly reach the property and smash drivers to say that I-DOT should go 75 feet, you know, some distance off of their property... Mr. McBride, let me ask you this. How do we read the common phrase we're seeing in Supreme Court cases that says the Illinois Supreme Court has basically found that 3102A is both a codification of and a limitation on a public entity's common law duty to maintain its property? My first response to that is you have to go to Wagner, where they've said most... Well, this was Washington versus the City of Chicago. And that's the language of Washington. And I would say definitely that was a case in which the injury occurred on that municipality's property. And there was never an issue to that as to whether or not this was an exhaustive collection of duties. There was just never an issue with that. And that's the fourth position here, that this is an exhaustive collection of duties in one section. Well, then the Supreme Court has also used this language, that the Act is in derogation of common law and specifies certain limitations on the liability of public bodies. One of those limitations, this is the Curtis case now, one of those limitations appears in 102, which says that the duty of care extends only to those persons that they've intended to use. So they're limiting the universe of the duty. In the cases in which the injuries occur on that property. And you can't get past the heading of the statute. I mean, I understand the court's concerns, but we're into 3102 and 3106 deeply here. And we, from our perspective, have never got past the heading of Article III, which is injury and the use of public property. And we're definitely talking about public property. You're saying that when the Tort Immunity Act was enacted in response to the abolition of sovereign immunity, that they only were limiting the duty in cases involving use. Nothing about conditions or anything else. That's completely outside the realm. Each case is fact specific. But generally, and particularly in this case, yes. And because if you look at 3102, you're actually protecting people with 3102. Give me a case then that is your best case that doesn't involve use. I think the best case, and I may have underestimated when I responded to the Justice's questions earlier about what the Supreme Court has said with regard to 3106 and the universe, our scope of immunity, and how this is supposed to work about whether this is an issue of the property or the injury. And this is from Bove v. Springfield. It's 167 ill second 372. You're talking about the bicycle case, B-O-U-B. B-U-B-B. B-U-B-B. The Supreme Court said, this is my preface, and it's on pages 11 to 13 I addressed this issue. But additionally, the Supreme Court specifically stated that, quote, resolution of this case depends on whether the site of the accident was public property intended or permitted to be used for recreational purposes, unquote, within the meaning of the statute, unquote. So there's two quotes within a quote. They may be quoting from another case. How does that clear everything up? Because you're talking about the site of the accident. That's what you're focused on. You're not focused on, and back to the fireworks case, I think Justice Cato was right on about the fireworks example. And again, maybe good learning sounded like it answered the question, because fireworks are an act of somebody. But in shooting off fireworks, let's say. So what you're saying is that if it's off the site, there's no, the Tort Immunity Act is gone. It's not implicated. As to conditions of property in relation to 3102 and 3106, absolutely. I can't speak to every other section, because I just haven't researched it. But if you're looking at negligence claims, it's an act or omission issue. The law treats them the same. And that's what we have here. We have five or 10 years of these folks doing nothing, looking at the tree and saying, we're going to do nothing. And it's the same thing in the fireworks situation. I don't recall anybody saying that. You get by the foreseeability question by saying, you know, there are a lot of trees, but we still ought to be able to present evidence with respect to their neglect. It's foreseeable. Our experts provide testimony. They did not provide any testimony. And that evidence ought to go to a jury and not be decided by a judge on the foreseeability. Absolutely. They haven't denied foreseeability. I haven't heard one person ever get up here and deny that a tree that's 75 feet tall, when it's dead and obviously decayed for five or 10 years, could fall and reach a road. I don't think they have to. All they have to do is tell you there are a lot of trees. What case says 106? The scope of their responsibility is dictated to a certain extent by the scope of the problem. Only under 3102B, in which they've never pled as a defense. There's never been this weighing issue on 3102B. They've never raised it. They've never gotten to that. What about the language of 106, that the statute was designed in addition to codify and limit the duties of the common law, it was also created to grant certain immunity? And I have another case for you, Your Honor. 106 doesn't say that this condition is limited only to users. It just says if the property is intended as Park District property, then if you're complaining about a condition, you have to show willful and wanton conduct. 3106 applies, and it focuses on the site of the accident. There's another case from this district, 215-113. This is an immunity that's granted. And it says that if you're going to complain about a condition of a property that's used for recreational purposes, you have to show willful and wanton conduct. Only if the injury occurs on that property. And that's what Kernbauer talks about. It focuses on the site of the accident. If it's not on the accident site, they're held to an ordinary duty. And that, logically, What were the facts in that case? That particular case, a boy was injured by a steel barricade. And there was an argument, in my recollection of the case, there was an argument over where the steel barricade was. But it was actually erected on forest preserved property. And so the court found immunity. Because the, in holding 3106 did provide immunity for the defendant, stated the accident site was located on the defendant's property. So they're focused on the accident site. They're not focused on the decision, or on the location of the property. And that's why I think the fireworks example is a great example. Another case that's out there, it's a federal court case, they don't have the site. But it's an Indian reservation. And there was somebody shooting a pistol on an Indian reservation at a highway. And the Indian reservation said, hey, we're immune from this. Because somebody got shot. The Indian reservation knew that this person was shooting, arguably knew or should have known that they were shooting people on the highway. And the Indian reservation folks said, well, we're immune from the conditions on our property. Even if we know about it. Not in this particular case. You had notice of the condition. And that's the real crux here. And why you haven't heard 3102B, and the cost issues of the notice. Because they haven't pushed back on the five to 10 year condition. And really, underlying this, and maybe there's some of the fact issues aren't necessarily directly important. But I think for understanding the case, the important part to remember is they denied this was their tree at the beginning. So this is kind of a shift of, hey, this isn't our tree, not our responsibility. Well, wouldn't you if you were their lawyer? Absolutely. He's just being a good lawyer. You know, it wasn't my tree. Now you caught me, it is my tree. I've got another one. How about immunity under 3106? That's what lawyers do. That's what made this an interesting case. Very well briefed on both sides. Anything else? Just to go back to the title of article three. We thank you both. I think it'll help us in our analysis of this rather interesting case. We're adjourned.